**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STUFF ELECTRONICS (DONG GUAN) LIMITED AND STUFF TECHNOLOGY LIMITED,<br><br>    Plaintiffs,<br><br> v.<br><br>FOR YOUR EASE ONLY, INC. AND QVC, INC.,<br><br>    Defendants. | CIVIL ACTION NO. 20-4333 |

**MEMORANDUM OPINION**

**Rufe, J.**                              **December 21, 2020**

Juno Financial LLC ("Juno"), seeks leave under Federal Rule of Civil Procedure 24(a) to intervene by right and participate in this litigation as an intervenor Plaintiff. Juno claims it is entitled to join this litigation because intervention is the only way for it to recover funds currently being held by defendant For Your Ease Only, Inc. ("FYEO")[1] which Plaintiffs Stuff Electronic (Dong Guan) Limited and Stuff Technology Limited (collectively "Stuff") seek to recover.[2]

---

[1] FYEO is a consumer goods company that specializes in selling products through QVC.

[2] Stuff manufactures electronics in China and ships them worldwide.

A. Background

This lawsuit arises from a series of purchase orders between Stuff, FYEO, nonparty Thinium Technologies, LLC ("Thinium"),[3] and QVC, Inc. ("QVC").[4] Stuff alleges that FYEO and QVC breached a series of written or implied contracts for the sale of phone chargers, and is entitled to damages in an amount no less than $455,994.00 ("disputed funds").[5]

Between December 2014 and May 2018, Stuff manufactured phone chargers to be sold by QVC. The transactions generally occurred as follows: QVC issued purchase orders to FYEO for the purchase of a specific type and number of phone chargers. FYEO then contacted Thinium which issued purchase orders to Stuff. Stuff then manufactured the phone chargers as per the purchase order and shipped them to the United States. QVC then sold the chargers to U.S. customers through its television and e-commerce platforms.

For payment, Stuff invoiced Thinium, which in turn, invoiced FYEO, which then invoiced QVC. Stuff alleges that between 2014 and 2018, Thinium fell behind with payments to Stuff.[6] As a result, Stuff, FYEO, and Thinium allegedly entered into an agreement in October 2018. The entities agreed to assign to Stuff the right to receive direct payments, bypassing Thinium.[7] Specifically, they agreed that: 1) while FYEO would continue to be the vendor of record with QVC, all future purchase orders from QVC and FYEO would be placed directly with

---

[3] Thinium, a Delaware limited liability company, contracted with Stuff to manufacture phone chargers to be sold in the United States under the Thinium brand. Thinium sold those phone chargers through its representation agreement with FYEO. Under this agreement, Thinium engaged FYEO as a sales representative and vendor of record to QVC to promote and sell Stuff's manufactured phone chargers pursuant to purchase orders issued by QVC. The parties informed the court during a telephone conference held on November 18, 2020, that Thinium is out of business.

[4] QVC is a general merchandise retailer, which distributes a variety of products (including phone chargers) directly to consumers.

[5] Compl. [Doc. No. 1] ¶¶ 1–3.

[6] *Id.* ¶ 20.

[7] *Id.* ¶ 21.

Stuff rather than Thinium; 2) all proceeds generated from future sales of phone chargers by QVC would be paid directly to Stuff; and 3) all invoices sent to FYEO, and purchase orders issued by QVC, would include assignment and payment instructions.[8]

Following this October 2018 agreement, and until June 2019, Stuff alleges that QVC issued purchase orders, with FYEO as the vendor, that included assignment and payment language requiring a 30% deposit to Stuff before acceptance and manufacture.[9] Then Thinium, on behalf of Stuff, sent FYEO invoices, listing Stuff as the vendor and including the assignment and payment language and deposit requirement. FYEO wired the 30% initial deposit to Stuff and Stuff manufactured and shipped the requested phone chargers to QVC. No later than 45 days after sales of the chargers, QVC transferred the money to FYEO and FYEO wired Stuff the 70% balance on the invoices.

On June 19, 2019, QVC issued ten separate purchase orders to FYEO to purchase a total of 18,480 phone chargers at a price of $42.48 per unit.[10] Thinium, on behalf of Stuff, sent FYEO ten separate invoices, each listing "Thinium/Stuff Electronics Ltd" as the vendor of the phone chargers, and each including the assignment and payment information from the purchase orders.[11] Per the assignment and payment instructions, FYEO wired a 30% deposit directly to Stuff. Stuff manufactured the phone chargers and shipped them to QVC. QVC approved the

---

[8] The complete assignment and payment instruction language is quoted in the Complaint. *See id*. ¶ 21.

[9] QVC denies Stuff's assertion that the assignment and payment instructions were included in the purchase orders it sent to FYEO. "The language identified by Plaintiffs does not appear on the true and correct copies of the purchase orders, and, pursuant to their terms, the purchase orders are not, in any event, assignable without QVC's consent. . . . In other words, the purported assignment upon which Plaintiffs' claims against QVC are premised are legally and factually groundless." QVC's Resp. to Juno's Mot. to Intervene [Doc. No. 14] at 2.

[10] Although the purchase orders included a quantity term of 18,480 phone chargers at a price of $42.48, the invoices associated included a price per unit of only $35.25. The discrepancy in price under the purchase orders and the invoices is due to FYEO taking its commission in this transaction for services rendered to Stuff. *See* Compl. [Doc. No. 1] ¶¶ 29–30.

[11] *See* Compl. Ex. B, Thinium Invoices [Doc. No. 1-5].

chargers, sold every unit by November 2019 and paid the remaining balance on the purchase order to FYEO.

Before FYEO made payment of the remaining 70% balance under the 2019 purchase orders to Stuff, it received a competing claim to the proceeds from Juno, a factoring company.[12] In 2017, Juno had entered into an accounts receivable purchase and security agreement ("factoring agreement") with Thinium, as well as a revolving loan note.[13] Under these agreements, Juno agreed to purchase eligible accounts from Thinium, including the sale of cellular phone chargers and batteries.[14] Juno claims it perfected its ownership interest in the accounts by filing a UCC financing statement ("UCC-1").[15] In December of 2017, it delivered written notice to FYEO instructing FYEO to pay Juno directly for all invoices related to Thinium.[16] According to Juno's prospective intervenor complaint, Thinium was not permitted to assign its rights to the proceeds under the ten 2019 invoices it sent to FYEO on behalf of Stuff.[17]

In January and February 2020, FYEO received letters from both Juno and Stuff in which each demanded payment of the disputed funds and threatened to sue if FYEO made payment to the other party.[18] As a result of the conflicting demands, FYEO has not remitted payment to

---

[12] FYOE's Resp. to Juno's Mot. to Intervene [Doc. No. 15] at 2.

[13] Under the factoring agreement, Juno agreed to purchase eligible accounts from Thinium. Juno and Thinium contemporaneously entered into a revolving loan note, wherein Juno paid Thinium $300,000, and wherein Thinium was required to repay this amount through collection of the accounts and other amounts due to Thinium from its account debtors. Juno's Mot. to Intervene [Doc. No. 13] at 2; *see also* Proposed Intervenor Compl. Ex. 1, Accounts Receivable Purchase agreement [Doc. No. 13-2] at 12; Proposed Intervenor Compl. Ex. 2, Revolving Loan Note [Doc. No. 13-2] at 25.

[14] Proposed Intervenor Compl. [Doc. No. 13-2] ¶¶ 12, 14.

[15] *Id.* ¶ 16; *see also* Proposed Intervenor Compl. Ex. 3, UCC Financing Statement [Doc. No. 13-2] at 36.

[16] Proposed Intervenor Compl. [Doc. No. 13-2] ¶¶ 17–18; *see also* Proposed Intervenor Compl. Ex. 4, Notice of Assignment and Change of Payee [Doc. No. 13-2] at 39.

[17] *See* Proposed Intervenor Compl. [Doc. No. 13-2] ¶¶ 35–53.

[18] FYOE's Resp. to Juno's Mot. to Intervene [Doc. No. 15] at 2; *see also id.* Ex. A, Demand Letters.

anyone. FYEO has set aside the funds in a segregated account pending resolution of this dispute, or until such time as the funds may be deposited with the Court.[19]

As a result of FYEO withholding the disputed funds, Stuff filed this action against FYEO and QVC asserting claims for breach of contract, account stated, breach of implied contract, promissory estoppel, and unjust enrichment.[20] In response, FYEO has filed a counterclaim and third-party complaint in interpleader naming Stuff and Juno as third-party defendants.[21] It has also filed a cross claim against FYEO seeking contribution and/or indemnification for any liability.[22] Juno was not named in this lawsuit, but now seeks to intervene as of right. Stuff opposes Juno's intervention while FYEO and QVC do not.

### B. Discussion

Rule 24 provides, in relevant part:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[23]

A litigant seeking intervention as of right under Rule 24(a)(2) must establish 1) a timely application for leave to intervene (which is undisputed in this case), 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent

---

[19] *Id.* at 2.

[20] Compl. [Doc. No. 1] ¶¶ 41–74.

[21] FYEO's Answer [Doc. No. 21] at 22–30.

[22] QVC's Answer [Doc. No. 22] at 15.

[23] Fed. R. Civ. P. 24(a)(2).

5

the prospective intervenor's interests.[24] Each of these requirements must be met for a party to properly claim a right to intervene.[25]

### 1.     *Sufficient Interest in the Current Litigation*

To establish a sufficient interest for intervention, Juno must demonstrate "an interest relating to the property or transaction which is the subject of the action."[26] This interest must be one that is significantly protectable, meaning the interest must be a legal interest as distinguished from interests of a general and indefinite character.[27] A mere economic interest in the outcome of the litigation is generally insufficient to support a motion to intervene.[28] This is because a prospective intervening party does not have an automatic right to intervene simply because a lawsuit may impede the prospective intervenor's right to recover in a separate suit.[29] However, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund."[30]

Juno argues through the factoring agreement, revolving loan note, and UCC-1, it has a lien on the disputed funds that creates a substantial and protectable interest in this litigation.[31] Stuff, however, argues that Juno's interest is merely one of economic interest because it "seeks to secure funds in this case to satisfy a previous debt in another [case]."[32]

---

[24] *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3rd Cir. 2005).

[25] *Mountain Top Condominium Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

[26] *Id.* (quoting Fed. R. Civ. P. 24(a)(2)).

[27] *Treesdale*, 419 F.3d at 220 (quoting *Mountain Top*, 72 F.3d at 366).

[28] *Id.* at 221 (quoting *Mountain Top*, 72 F.3d at 366).

[29] *Id.* (quoting *Mountain Top*, 72 F.3d at 366).

[30] *Id.* (quoting *Mountain Top*, 72 F.3d at 366).

[31] Juno's Mot. to Intervene [Doc. No. 13] at 4–5.

[32] Stuff's Opp. Juno's Mot. to Intervene [Doc. No. 18] at 8.

Juno's claims in its proposed intervenor complaint are premised on its ownership interest in Thinium's accounts receivable for cellular phone chargers and batteries.[33] In connection with that claim, Juno seeks to invalidate the assignment and payment language that was allegedly included in the 2019 invoices between Stuff, FYEO, and Thinium.[34] If Juno had brought a claim seeking only to collect for Thinium's unpaid debt, the Court would likely find it to be only an economic interest.[35] But Juno's claims assert a legal interest in the disputed funds at issue in this case. In other words, both Stuff and Juno seek to recover the money associated with the ten 2019 invoices. Juno seeks to use its own security interest to invalidate the agreement Stuff relies upon in support of its claim to the disputed funds.

In its response, Stuff also cites to *Martucci v. Proctor & Gamble*, in which the District of New Jersey determined that a creditor does not have a right to intervene if the creditor's only interest in the litigation is a concern that it will be unable to collect from the debtor plaintiff after the litigation is over.[36] But this case is distinguishable. Unlike *Martucci*, Juno's relationship is not a "one off" debtor/creditor relationship. Juno pleads facts, that if true, show a direct right to the proceeds under the 2019 Thinium invoices. In particular, Juno alleges that Thinium was very involved in the 2019 phone charger purchase framework.[37] This would suggest that Juno's

---

[33] *See* Proposed Intervenor Compl. [Doc. No. 13-2] ¶¶ 14–28.

[34] *Id.* ¶ 52.

[35] *See*, *e.g.*, *In re Stone & Webster, Inc.*, 335 F. App'x. 202, 204 (3d Cir. 2009) (because a mere economic interest in the outcome of litigation is insufficient for intervention, "having a claim to proceeds of collateral does not entitle a party to intervene. . . . Holding otherwise would permit every secured creditor to intervene in its debtor's litigation.").

[36] *Martucci v. Procter & Gamble*, No. 15-4434, 2015 WL 5853985, at *2 (D.N.J. Oct. 5, 2015) (concluding that a creditor of the plaintiff did not have a right to intervene when its only interest was a concern that if plaintiff was awarded monetary relief, plaintiff would be able to hide the money eliminating the creditor's ability to collect on a previous debt).

[37] "[T]he invoices giving rise to this dispute were issued on Thinium letter head, using Thinium's invoice number formatting, included Thinium's address, and listed Thinium alongside Stuff as a vendor." Proposed Intervenor Compl. [Doc. No. 13-2] ¶ 21.

claims are not premised on collecting debt under a "prior, unrelated judgment against the plaintiff."[38] The direct legally protectible interest in the disputed funds distinguishes Juno's interest from that of other creditors seeking to intervene to recoup debts for unrelated disputes.

Stuff also argues that Juno's claim is not a direct, cognizable interest because Juno was not a party to any of the July 2019 purchase orders—which would make its claims too contingent or remote for the present litigation.[39] Although Juno lacks contractual privity with the named parties in this litigation, the disputed funds are connected to Juno's security interest in any Thinium proceeds for the sale of cellular phone chargers. Juno's claim is a direct interest that seeks to assert its rights to the same funds as Stuff. The Court does not find this interest too contingent or remote.

In the alternative, even if the Court were to find that Juno possessed a purely economic interest in this litigation, it may still be sufficient to intervene if the interest is in a specific fund and the present case is affecting that fund.[40] The Third Circuit's decision in *Mountain Top* is instructive. There, the court concluded that a condominium owner had an interest in proceeds paid from an insurance carrier to the condominium association because the funds were assets of an express trust, the individual unit owners were the intended beneficiaries of that trust, and the proceeds had been set aside in a specific fund.[41] The court held that because the condo owners possessed a property interest in the res of the trust, they had a property interest in the specific

---

[38] *Martucci*, 2015 WL 5853985 at *2.

[39] *See Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) ("[A] number of courts have concluded that this interest must be 'direct,' as opposed to contingent or remote.").

[40] *See Mountain Top*, 72 F.3d at 366.

[41] *Id.* at 367.

fund.[42] Moreover, each condominium owner had a right to see that the assets of the trust would not be diverted in a manner that would have defeated the purpose of the trust.[43]

Stuff argues that the Court should narrowly construe what constitutes a "specific fund" to a trust fund or escrow account[44] but the decision in *Mountain Top* is not so restricted. Here, like in *Mountain Top*, the specific funds paid by QVC have been set aside by FYEO pending resolution of the litigation.[45] Both Stuff and Juno claim an interest in this fund, and intervention provides the best path to determine how the fund should be disbursed.

### 2. *Impairment of Interest*

The prospective intervening party must also show that the claim is actually in dispute in the present litigation.[46] Juno claims that its purported security interest invalidates the assignment and payment language Stuff relies upon to support its breach of contract claim. Without intervention, Juno may lose its opportunity to raise these claims and present evidence on this issue. Additionally, if Juno's claims are valid, it is unlikely that Stuff would be able to recoup the remaining 70% of the payment due under the 2019 invoices. For those reasons, Juno's claim directly relate to the dispute in this litigation and its rights will be impaired if intervention is not permitted.

---

[42] *Id.*

[43] *Id.* at 367–68.

[44] *See* Stuff's Opp. Juno's Mot. to Intervene [Doc. No. 18] at 8 (citing *Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, 546 F. Supp. 2d 194, 202 (M.D. Pa. 2008).

[45] *See Westra*, 546 F. Supp. 2d at 201 (denying intervention because the intervening party was seeking funds not "set aside in a discrete, limited fund"); *Treesdale*, 419 F.3d at 222 (finding an intervenor's interest was purely economic where the assets at issue had not yet been paid by an insurance carrier and that the insurance policy itself did not qualify as a "specific fund").

[46] *Treesdale*, 419 F.3d at 227–28; *see also Moses v. Midland Credit Mgmt.*, No. 19-3115, 2020 WL 1853510 (E.D. Pa. Apr. 13, 2020) (denying intervention and rejecting a claim of impairment of interest by a creditor where the entitlement to collect a debt was not at issue in the litigation).

### 3. *Adequate Representation*[47]

The current parties to this litigation do not adequately represent Juno's interests. Stuff argues Juno has the same ultimate objective as the current defendants in the suit because FYEO bases its defense on there being "competing demands for payment of the [disputed] funds."[48] The Court disagrees. Although FYEO advocates for Juno's intervention—primarily to avoid being subject to competing court orders concerning the same disputed funds it has set aside—its ultimate objective is to deposit the disputed funds with the Court and then seek dismissal from the litigation.[49] QVC's objective is to be dismissed immediately as "it has no proper role in this dispute, and that this dispute is best resolved between Juno and Stuff."[50]

If permitted to intervene, Juno would argue for enforcement of its alleged ownership interests in the disputed funds, pursue its claims against Stuff for tortious interference, and ask the Court to award payment and damages.[51] The current parties do not share these objectives, and Juno is the only party equipped to adequately represent its claims.

Under Rule 24(a)(2), Juno has a right to intervene in this litigation. An order will be entered.

---

[47] After Juno filed its motion, Defendant FYEO filed a third-party complaint in interpleader. *See* FYEO's Answer [Doc No. 21]. FYEO appears to name Juno as a third-party defendant, but also asks the Court to join them in the litigation. The Court notes that Juno has not been served the third-party complaint and is therefore not currently a party to this action.

[48] Stuff's Opp. Juno's Mot. to Intervene [Doc. No. 18] at 12–13.

[49] *See* FYEO's Answer [Doc. No. 21] at 22–30.

[50] QVC's Resp. to Juno's Mot. to Intervene [Doc. No. 14] at 3.

[51] Juno Reply Supp. Mot. to Intervene [Doc. No. 19] at 5.