IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STUFF ELECTRONICS (DONG GUAN) LIMITED and <br> STUFF TECHNOLOGY LIMTED <br> Plaintiffs, <br> v. <br> FOR YOUR EASE ONLY, INC. *et al.*, <br> Defendants. | CIVIL ACTION NO. 20-4333 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                              September 30, 2022

Plaintiffs Stuff Technology Limited and Stuff Electronics (Dong Guan) Limited (collectively, "Stuff") brought this litigation against For Your Ease Only, Inc. ("FYEO") and QVC, Inc. ("QVC")[1] to recover funds from a series of purchase orders for phone chargers in transactions among Stuff, FYEO, QVC, and nonparty Thinium Technologies, LLC ("Thinium"). Juno Financial LLC ("Juno") was granted leave to intervene under Federal Rule of Civil Procedure 24(a).[2] Stuff and FYEO have now filed motions for summary judgment and Juno has filed a motion for partial summary judgment. For the reasons that follow, the motions will be denied.

---

[1] QVC has been dismissed without prejudice as a party. *See* Doc. No. 45.

[2] Doc. No. 31.

I. **BACKGROUND**

Except where noted, the following facts are undisputed for purposes of summary judgment. Thinium, which is not a party to this litigation, developed and owned the intellectual property rights to manufacture and sell cordless chargers for cellphones (the "Phone Chargers").[3] On December 15, 2014, Thinium entered into a written Exclusive Representation Agreement (the "Representation Agreement") with FYEO.[4] Pursuant to the Representation Agreement, FYEO served as a sales representative for Thinium to promote the Phone Chargers on QVC live television shows.[5] QVC sold the Phone Chargers to consumers and remitted the sales proceeds to FYEO.[6]

Around December 2014, Stuff began manufacturing the Phone Chargers at Thinium's request.[7] Thinium and Stuff did not have a master agreement to govern the terms of production.[8] Instead, Thinium would issue purchase orders to Stuff to request the production of a certain number of Phone Chargers.[9] Once Stuff received and accepted a purchase order, it manufactured the Phone Chargers and shipped them to QVC warehouses.[10]

---

[3] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 1.

[4] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 8.

[5] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 5, 8. FYEO also previously entered into an agreement with QVC on March 6, 2001 (the "QVC Agreement"). *Id.* at ¶ 7.

[6] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 4.

[7] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 9.

[8] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 9.

[9] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 9.

[10] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 9.

Starting in December 2017, Juno began lending money to Thinium.[11] On December 27, 2017, Juno and Thinium memorialized their agreement by entering into an Accounts Receivable Purchase and Security Agreement, a Revolving Loan Note and Credit Agreement, and a Purchase Order Finance Agreement (collectively, the "Juno Agreements").[12] On December 28, 2017, Juno filed a UCC Financing Statement ("UCC-1") with the Delaware Secretary of State.[13] The same day, Juno and Thinium sent FYEO a notice of assignment and change of payee letter (the "NOA").[14] The NOA stated, in pertinent part:

**Notice of Assignment and Change of Payee**

> We are pleased to inform you we have established a working relationship that provides [Thinium] with a working capital line of credit. These funds will enable further growth and expansion from which [Thinium] and their customers will benefit, both now and in the future. Accordingly, [Thinium] has assigned all present and future Accounts Receivable with your company to [Juno].
>
> This letter hereby instructs you to remit your payment of all invoices from [Thinium] directly to [Juno], and to continue to do so until notified otherwise by [Juno]. Payment made to any party except Juno will not relieve your obligations for Account Payable due [Thinium] and this notice may not be revoked except in writing by an officer of [Juno].[15]

From January 2018 to October 23, 2018, FYEO wired Thinium's receivables from the sale of Phone Chargers to Juno.[16] According to Stuff, Juno then made some payments to Stuff but stopped after January 31, 2018.[17] However, for orders placed in October 2018 and November

---

[11] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 10.

[12] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 11, 12.

[13] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 13.

[14] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 14.

[15] Joint Appendix Tab 11 [Doc. No. 58-10].

[16] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 15.

[17] Stuff's Resp. Opp. Juno's Mot. Summ. J. [Doc. No. 69] at 8-9.

2018 (the "October 2018 Transaction" and the "November 2018 Transaction"), FYEO transmitted orders to Thinium and wired a deposit to Stuff.[18] The purchase orders included the following instructions (the "Assignment Instructions"), which provided, in pertinent part:

> The receivables from this [purchase order] and the invoices arising from this [purchase order] has been assigned to Stuff Technology Limited…Remark : Upon approval of [purchase order] there will be a 30% deposit required to accept purchase order[.] If there is any change of the above payment/wire information must seek for Stuff Technology Limited approval[.][19]

Stuff then shipped the Phone Chargers to QVC warehouses, and FYEO promoted them on QVC.[20] QVC sold the Phone Chargers and disbursed the receivables to FYEO.[21] FYEO disbursed the receivables from QVC to Stuff, net of FYEO's commission, and any applicable offsets set forth in the Representation Agreement.[22]

Around June 2019, FYEO received ten orders from QVC for the purchase of Phone Chargers (the "June 2019 Transaction").[23] FYEO transmitted all ten orders to Thinium and wired a deposit to Stuff.[24] As with earlier orders, Stuff manufactured and shipped the Phone Chargers to QVC warehouses, FYEO appeared on live television to promote the goods, and QVC sold the goods it received and disbursed the receivables to FYEO.[25] FYEO deducted its commission from

---

[18] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 17-18, 23-25.

[19] Joint Appendix Tab 15c [Doc. No. 58-20]. FYEO avers that Thinium included written payment instructions to FYEO in its invoices and purchase orders, designating Stuff as the payee of Thinium's net receivables. FYEO's Resp. to Stuff's Mot. Summ. J. [Doc. No. 62] at ¶ 6. FYEO further alleges that Thinium directed FYEO to include a written acknowledgement of Thinium's assignment to Stuff in FYEO's purchase order notices to Thinium. *Id.* at ¶ 12.

[20] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 19-20, 25-26.

[21] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 20, 27.

[22] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 21, 28.

[23] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 29.

[24] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 29-30.

[25] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 32-33.

QVC's disbursement from the June 2019 Transaction, but it has not yet disbursed the receivables to Stuff or Juno.[26] FYEO is currently in possession of approximately $453,000 from the January 2019 Transaction (the "Retained Funds").[27] In November 2019, Stuff and Juno each notified Thinium and FYEO that it claimed full right to the Retained Funds.[28]

Unable to reach a resolution, Stuff filed this action against FYEO alleging that it is entitled to the proceeds from the June 2019 Transaction.[29] Stuff also asserts direct claims for damages against FYEO for breach of contract, account stated, breach of implied contract, promissory estoppel, and unjust enrichment.[30] On December 21, 2020, Juno was allowed to intervene in this action as a Plaintiff,[31] and Stuff asserts direct claims against Juno for unjust enrichment and money had and received.[32] Juno argues that it is entitled to the full proceeds from the June 2019 Transaction and asserts direct claims for damages against FYEO and Stuff.[33] Specifically, Juno asserts claims of breach of statutory duty to pay outstanding accounts, breach of contract, and tortious interference with existing contractual relations against FYEO.[34] Juno also brings a claim of tortious interference with existing contractual relations against Stuff.[35]

---

[26] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 34.

[27] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 6.

[28] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶ 35.

[29] Joint Statement of Stipulated Material Facts [Doc. No. 59-1] ¶¶ 36-37.

[30] Stuff Am. Compl. [Doc. No. 48-1] ¶¶ 70-137.

[31] Doc. No. 31.

[32] Stuff's Am. Compl. [Doc. No. 48-1] ¶¶ 138-150.

[33] Juno's Answer to FYEO's Compl. [Doc. No. 47-2] at 7.

[34] Juno's Am. Compl. [Doc. No. 47-1] ¶¶ 43-68.

[35] Juno's Am. Compl. [Doc. No. 47-1] ¶¶ 69-75.

FYEO has asserted counterclaims for interpleader and for recovery of its costs and attorneys' fees.[36]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[38]

The court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[39] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[40] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[41] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[42] If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[43]

---

[36] FYEO's Answer to Juno's Am. Compl. & Counterclaims [Doc. No. 49] ¶¶ 28-67; FYEO's Answer to Stuff's Am. Compl. & Counterclaims [Doc. No. 51] ¶¶ 28-67.

[37] Fed. R. Civ. P. 56(a).

[38] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

[39] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[40] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citations omitted).

[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[42] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[43] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

"The rule is no different where there are cross-motions for summary judgment."[44] As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."[45]

### III. DISCUSSION

While the parties present the Court with complicated theories and analyses, the issues for purposes of summary judgment are more straightforward. Stuff, as the manufacturer of the Phone Chargers, fronted the costs to manufacture the goods at its own expense upon receipt of the orders. Stuff then shipped those goods to QVC warehouses and fully performed with respect to the purchase orders. Neither Juno nor FYEO disputes this. Therefore, both logic and equity dictate that Stuff must be owed at least a portion of the receivables from the sale of Phone Chargers.

Stuff and Juno dispute whether Juno is a secured creditor with a perfected interest in the receivables. However, this has no bearing on whether Stuff is owed at least a portion of the receivables, given that Stuff fronted the costs to manufacture the Phone Chargers. Regardless of whether Juno secured a priority interest in Thinium's receivables, Juno has not adequately explained why it is entitled to the full amount of the Retained Funds or the entirety of Thinium's

---

[44] *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008) (citation omitted).

[45] *Id.* (internal quotation and citation omitted).

receivables from January 2018.[46] Juno argues that payments made by FYEO to Juno were required to repay Thinium's loan obligation to Juno.[47] However, this does not support an argument that Juno is entitled to *all* of Thinium's receivables, while Stuff should receive nothing.

The parties also dispute whether Juno consented to the reassignment of receivables to Stuff and, if so, whether Juno revoked its consent. This open factual dispute impacts how much Stuff may be owed, how much Juno may be owed, if anything, and FYEO's alleged liability. On one hand, FYEO maintains that Thinium represented that Juno consented to FYEO making payments to Stuff instead of Juno, and that Juno informed FYEO that Stuff, Thinium, and Juno had discussed a plan that involved Juno and Stuff splitting payments.[48] Stuff also alleges that Juno and Thinium discussed disbursing receivables to Stuff, and Juno did not argue that the proposed plan would violate the Juno Agreements.[49] On the other hand, Juno avers that it consistently reaffirmed its security interest in Thinium's receivables and also argues it made several attempts to engage in communications with Stuff to resolve Thinium's financial difficulties so that both parties could be paid—which allegedly went ignored by Stuff.[50]

Despite the parties advancing several arguments and competing factual theories, the critical issues that remain unanswered are three-fold: (1) which party or parties owe money to Stuff, (2) how much in receivables is owed to Stuff, and (3) whether Juno and FYEO are entitled to any portion of the receivables and, if so, how much. A complicating factor is that Thinium—

---

[46] Besides the Retained Funds, Stuff argues that Juno unjustly retained funds paid by FYEO to Thinium in relation to purchase orders from January 2018 (the "January 2018 Transaction"). Stuff's Mot. Summ. J. [Doc. No. 59] at 6.

[47] Juno's Resp. Opp. Stuff's Mot. Summ. J. [Doc. No. 64] at 10-11.

[48] FYEO's Resp. Juno's Mot. Summ. J. [Doc. No. 63] at 9, 10.

[49] Stuff's Resp. Opp. Juno's Mot. Summ. J. [Doc. No. 69] at 11-13.

[50] Juno's Reply Br. [Doc. No. 78] at 14.

an integral entity in the events leading up to this lawsuit that maintained relationships with Juno, FYEO and Stuff—is not a party to the litigation (and is alleged to be insolvent).[51] Given these open questions, the Court is precluded from granting summary judgment on the parties' claims.

## IV. CONCLUSION

Accordingly, Stuff and FYEO's motions for summary judgment are denied, and Juno's motion for partial summary judgment is denied. An order will be entered.

---

[51] FYEO's Resp. Stuff's Mot. Summ. J. [Doc. No. 62] at 5.